DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Nancy L. Kleinman, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for permanent total disability ("PTD") compensation, and to enter an order granting such compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator subsequently filed an "application for reconsideration" of the magistrate's decision, which this court has construed as objections to the magistrate's decision.
 {¶ 3} In her objections, relator does not dispute that there is medical evidence in the record to support the commission's decision that she is medically capable of engaging in some sustained remunerative employment. Rather, relator argues that the commission abused its discretion in its consideration of the non-medical or vocational factors. Specifically, relator maintains that the vocational report of Barbara Burk, cited by the commission, does not support a finding that relator has transferable job skills.
 {¶ 4} In considering the non-medical disability factors, the commission relied in part upon Burk's vocational report. Burk viewed relator's age (47 at the time of the report) and educational background (having obtained a GED and "classified as a person who has a high school education") as vocational assets.
 {¶ 5} Relator argues that Burk's statement that individuals with a GED can typically learn is too general, and that it does not address her individual educational development, which relator maintains is, at best, at the eighth grade level. The Ohio Supreme Court, however, has determined that it is within the discretion of the commission to find a high school education to be an asset even though a claimant's "grade school level of spelling and below-average reading ability clearly can be perceived negatively." State ex rel. Ellis v. McGraw Edison Co. (1993),66 Ohio St.3d 92, 94.
 {¶ 6} As to relator's work history, Burk found that, although relator has held jobs for long periods of time, and that she has a strong work history, her work as a nurse's assistant "is semi-skilled work activity that does not have skills that transfer to sedentary occupations." In contrast, the commission found relator's work history to be a positive factor, noting that she had previously worked as a nurse's aide, a car detailer, a waitress and a press operator. The staff hearing officer determined that relator's work background, "in occupations ranging from unskilled to in one case a semi-skilled position which required training as well as certification," indicated that she "has the skills and qualifications to perform other entry level occupations."
 {¶ 7} Although the commission may not have interpreted relator's work history in the same manner as Burk, the Ohio Supreme Court has made clear that "[t]he commission may reject the conclusion of a rehabilitation report and draw its own conclusion from the same nonmedical information."State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141. Thus, in considering a claimant's long tenure at one job, although such circumstance may be viewed negatively, "because it prevented the acquisition of a broader range of skills that more varied employment might have provided," it may also be considered a positive asset, suggesting a "stable, loyal and dependable employee worth making an investment in." Id. at 142. Moreover, a claimant's lack of transferable skills does not mandate a PTD award, as a PTD assessment "examines both claimant's current and future, i.e., potentially developable, abilities." Id.
 {¶ 8} In the present case, there was some evidence to support the commission's determination that relator's age, education and work history constitute positive factors that would permit her to engage in some type of sustained remunerative employment. Accordingly, as determined by the magistrate, the commission did not abuse its discretion, and relator's objections are overruled.
 {¶ 9} Following an independent review, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, relator's requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Klatt and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Nancy L. Kleinman, :
 Relator, :
v. : No. 04AP-692
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Salem Community Hospital, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on January 31, 2005 Boyd, Rummell, Carach Curry Co., L.P.A., and Matthew N.Bins-Castronovo, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
In Mandamus.
 {¶ 10} In this original action, relator, Nancy L. Kleinman, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 11} 1. On March 19, 1997, relator sustained an industrial injury while employed as a nurse assistant for respondent Salem Community Hospital, a state-fund employer under Ohio's workers' compensation laws. The industrial claim is allowed for: "sprain of neck; sprain thoracic region; herniated disc C5-6, left sided producing compression of the left anterior aspect of the cervical cord extending into the left C5-6 neuroforamen," and is assigned claim number 97-355733.
 {¶ 12} 2. Relator has undergone two cervical surgeries as a result of her industrial injury. Her second surgery was performed on March 12, 1999.
 {¶ 13} 3. Relator was paid temporary total disability compensation following her second surgery based upon periodic reports from her attending physician Jeffrey R. Cohen, D.O.
 {¶ 14} 4. On April 29, 2003, relator was examined by Cynthia Taylor, D.O., on behalf of the commission. In her narrative report, Dr. Taylor opined that relator was not able to return to her former position of employment as a nurse assistant and that her industrial injuries had reached maximum medical improvement ("MMI"). Dr. Taylor further opined:
* * * As a result of this injury she is unable to do any repetitive bending or lifting. She is unable to lift over 10 lbs. on an intermittent basis. She is unable to perform overhead lifting. She is unable to use her left arm in a repetitive manner.
 {¶ 15} 5. Dr. Taylor also completed a form captioned "Abbreviated Physical Capacities Opinion Form." On this form, Dr. Taylor indicated relator's physical capacities for sitting, standing, walking, lifting, carrying, and other types of functions.
 {¶ 16} 6. Following a July 29, 2003 hearing, a staff hearing officer ("SHO") terminated temporary total disability compensation on grounds that the industrial injury had reached MMI. The SHO relied upon Dr. Taylor's April 29, 2003 report.
 {¶ 17} 7. On September 30, 2003, relator filed an application for PTD compensation. In support, relator submitted a report, dated August 12, 2003, from Dr. Cohen stating:
* * * Since the injury she has undergone two cervical fusions, and has been seen by the pain clinic for epidurals. She is taking medication for pain on a regular basis, including Ultram, and Neurontin. This is taken for stoppage of pain, however she still has significant pain and discomfort.
It is my medical opinion that Nancy is permanently and totally disabled at this particular point in time for any renumerative [sic] employment. She can not do much in any functional capacity, limitations would be severe, on any type of job, including not being able to lift more than 10 lbs. intermittently. She cannot stand, walk or sit for any prolonged period of time, is not able to do office work because of the intense medication she is on. * * *
 {¶ 18} 8. Dr. Cohen also completed a form captioned "Functional Capacities Evaluation." On the form, Dr. Cohen indicates relator's physical capacities for sitting, standing, walking, lifting, carrying, and other types of functions.
 {¶ 19} 9. On December 11, 2003, relator was examined at the commission's request by Richard J. Reichert, M.D. In his narrative report, dated December 23, 2003, Dr. Reichert opined:
* * * As relates to each of the allowed conditions in this claim, this patient has indeed reached maximum medical improvement.
* * * Based on the AMA Guides to the Evaluation of PermanentImpairment, Fourth Edition, (1993), this patient shows evidence of 15% of whole person impairment. This is based on assignment of DRE Category III for the cervicothoracic region. This patient's radiculopathy and need for surgical intervention places her in Category III.
(Emphasis sic.)
 {¶ 20} 10. Dr. Reichert also completed a "Physical Strength Rating" form dated December 19, 2003. The form asks the examining physician to indicate by checkmark whether the injured worker is capable of "physical work activity" and, if so, the category of work activity the injured worker is capable of performing. On the form, Dr. Reichert indicated that relator is capable of physical work activity described as "sedentary work" as defined by the commission's rules.
 {¶ 21} 11. The commission requested an employability assessment report from Barbara E. Burk, a vocational expert. The Burk report, dated February 4, 2004, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform. (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
Indicating acceptance of Dr. Reichert's opinion that relator can perform sedentary work and responding to the above query, Burk listed the following employment options: "Assembler; Cashier; Telephone Solicitor * * * Data Entry Clerk; Quality Control Inspector; Hospital-Admitting Clerk."
 {¶ 22} Under "III Effects of Other Employability Factors," the Burk report states:
[One] Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
Answer: Age: Ms. Kleinman is classified as a person of younger age. Individuals in this age category, typically, can learn and perform new, unfamiliar tasks at a competitive pace. Ms. Kleinman's age is considered a vocational asset.
Education: Ms. Kleinman completed the tenth grade and obtained a GED diploma. She is classified as a person who has a high school education. Individuals in this category typically can learn and perform semi-skilled and skilled work activities. This academic achievement level is viewed as a vocational asset.
Work History: Ms. Kleinman has held jobs for long periods of time, suggesting that she had a positive work ethic and basic work habits, including the ability to attend daily, be punctual, cooperate with peers and supervisors and perform tasks to her employers' expectations. Her work as a Nurse Assistant is semi-skilled work activity that does not have skills that transfer to sedentary occupations. That is the only work activity that she performed within the past relevant time period. Although a strong work history, it is not one that will be helpful in overcoming any significant employment barriers.
Other: It is highly probable that Ms. Kleinman lacks the necessary job search and interview skills to overcome significant employment barriers, such as a long absence from competitive employment and a work history that includes employment only as a Nurse's Aide within the past twenty years. The lack of such job-seeking skills presents a significant employment barrier.
[Two] Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: Ms. Kleinman is a person of younger age who has a GED diploma and was motivated to a [sic] learn a semiskilled occupation. She may be capable of learning other skills that lead to sedentary or light jobs. If this is considered, it is highly recommended that Ms. Kleinman focus on skill development that is of a short duration and, ideally, learned on the job. This is recommended since she is approaching middle age and has been out of the competitive labor market for a long time period.
(Emphasis omitted.)
 {¶ 23} Under "IV Employability Assessment Database," the Burk report states:
B. Work History
Job Title * * * Skill Strength Dates
 Level Level
Nurse Assistant * * * Semi-skilled Medium 12/88-8/97;
 5/88-12/88;
 3/85-5/88
Informal Waitress * * * Marginally Light 4/80-8/81;
 semi-skilled 2/80-4/81
Injection-Molding
Machine Tender * * * Unskilled Light 12/76-3/77
Automobile
Detailer * * * Unskilled Medium 6/72-4/73
 {¶ 24} 12. Following a March 16, 2004 hearing, an SHO issued an order denying relator's PTD application. The SHO's order states:
This order is based upon the report of Dr. Reichert as well as the vocational report from Miss Burke [sic].
Dr. Reichert, who examined the claimant on behalf of the Industrial Commission, indicated that the claimant has reached maximum medical improvement and that she cannot return to her former position of employment, but is capable of performing sedentary work which means exerting up to 10 pounds of force frequently to lift, carry, push, pull, or otherwise move objects. He further goes on to state that the claimant has a 15 percent permanent partial impairment with respect to the whole person as it relates to claimant's sole industrial injury from an orthopedic standpoint.
Therefore, based upon the opinion of Dr. Reichert, who has examined the claimant on all of the allowed conditions for which claimant's sole industrial injury is recognized, the Staff Hearing Officer concludes that the claimant is medically capable of performing some sustained remunerative employment. Therefore, the Staff Hearing Officer finds that a discussion of the claimant's non-medical disability factors is now in order.
Claimant is 47 years of age and has a 10th grade education, but subsequently did obtain her GED. Claimant has furthered her education by attending and completing a three month program at Akron University in 1986 in order to be a certified nurse's aide. Per claimant's IC-2 application on file, as well as testimony at hearing, claimant indicates the ability to read, write, and do basic math. Claimant's work history consists of working as a car detailer for approximately two years early on in her working career as well as a waitress for approximately one and one-half years and a press operator for a few months, but primarily worked the bulk of her working career as a nurse's aide for the above-stated employer for approximately twelve years, performing duties as patient care, assisting patients in daily activities of lifting, bathing, walking, repositioning, feeding, making beds, light cleaning, taking vital signs as well as assisting registered nurses and licensed practical nurses with their duties.
Mr. Simone performed a vocational evaluation of the claimant. Upon reviewing the claimant's work history, age, and education, he found no work experience which would transfer to sedentary work. On the other hand, Miss Burke [sic] performed a vocational evaluation of the claimant on behalf of the Industrial Commission. Upon reviewing the claimant's work history, age, and education, she is of the opinion that the claimant is not precluded from engaging in sustained remunerative employment and possesses the ability to perform various sedentary occupations. The Staff Hearing Officer concurs with Miss Burke's [sic] opinion and finds that claimant's non-medical disability factors do not necessarily have a negative impact on claimant's ability to work or to be retrained but rather are to be viewed as positive factors from a vocational view point.
As indicated before the Staff Hearing Officer finds that the claimant's age is a positive factor as the claimant's age of 47 leaves approximately 15 plus years of working left ahead of her.
The Staff Hearing Officer finds that the claimant's education is also a positive factor. The claimant's high school plus equivalent education, noting that claimant did obtain her GED, plus furthered her education by attending and completing classes at the University of Akron in order to be a certified nurse's aide, may not necessarily provide claimant with present time skills but is more than adequate for the claimant to meet the basic demands of a number of entrylevel jobs and is consistent with the ability to perform and/or learn some skilled as well as unskilled work on a sedentary basis. Furthermore, the Staff Hearing Officer finds that the claimant's high school equivalent education in and of itself does not indicate a lack of intellectual ability to be retrained, as claimant indicates on her IC-2 application her ability to read, write, and do basic math.
Furthermore, the claimant's work history is also definitely a positive factor. The claimant working [sic] as a nurse's aide, car detailer, waitress as well as press operator, which indicates employment in occupations ranging from unskilled to in one case a semi-skilled position which required training as well as certification indicates and suggests that the claimant has the skills and qualifications to perform other entry level occupations based upon her prior semi-skilled work history and high school plus equivalent education.
Therefore, based upon the limited physical restrictions by Dr. Reichert who indicates that claimant can perform sedentary work, along with claimant's predominately semi-skilled work history, age with approximately 15 years of working life ahead of her, as well as high school plus equivalent education, the Staff Hearing Officer finds on a whole that the claimant is not permanently and totally disabled and is not precluded from all sustained remunerative employment.
 {¶ 25} 13. On July 9, 2004, relator, Nancy L. Kleinman, filed this original action.
Conclusions of Law:
 {¶ 26} Two issues are presented: (1) whether the commission was precluded from its reliance upon Dr. Reichert's reports because he allegedly failed to complete a so-called functional capacities evaluation; and (2) whether the commission abused its discretion by relying upon the Burk report.
 {¶ 27} The magistrate finds: (1) the commission was not precluded from its reliance upon Dr. Reichert's reports; and (2) the commission did not abuse its discretion by relying upon the Burk report.
 {¶ 28} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 29} Turning to the first issue, a clear indication by the commission of the residual medical capacities it believes a claimant to possess is vital to its nonmedical review. State ex rel. Corona v. Indus.Comm. (1998), 81 Ohio St.3d 587.
 {¶ 30} Ohio Adm. Code 4121-3-34(B)(4) states:
"Residual functional capacity" means the maximum degree to which the claimant has the capacity for sustained performance of the physical-mental requirements of jobs as these relate to the allowed conditions in the claim(s).
Ohio Adm. Code 4121-3-34(B)(2)(a) states:
(a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 31} When Dr. Reichert indicated by checkmark on the physical strength rating form that relator can perform sedentary work, he was indicating that relator's residual functional capacity resulting from the industrial injury is at the sedentary level as defined by Ohio Adm. Code4121-3-34(B)(2)(a).
 {¶ 32} The commission determined that relator is capable of performing sedentary work based upon Dr. Reichert's reports. Thus, the commission determined that relator's residual functional capacity was at the sedentary work level based upon Dr. Reichert's reports.
 {¶ 33} Here, without citation to any authority, relator, in effect, asserts that Dr. Reichert's reports do not constitute some evidence of relator's residual functional capacity because he allegedly did not complete a physical strength rating form that evaluated relator's functional capacity as did Drs. Cohen and Taylor. Relator is incorrect.
 {¶ 34} Clearly, the "Physical Strength Rating" form (prescribed by the commission for the use of its examining physicians) is designed to assist the physician in reporting his opinion as to the injured worker's residual functional capacity based upon the physical examination. When Dr. Reichert indicated on the form that relator can perform sedentary work, he, in effect, opined that relator's residual functional capacity met the description set forth at Ohio Adm. Code 4121-3-34(B)(2)(a), which is also printed on the form itself.
 {¶ 35} Accordingly, the commission did not abuse its discretion by relying exclusively upon Dr. Reichert's reports in determining relator's residual functional capacity.
 {¶ 36} Turning to the second issue, it is settled that the commission is the expert on the nonmedical factors. State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266, 271. Thus, the commission may credit offered vocational evidence, but expert opinion is not critical or even necessary. Id.
 {¶ 37} Here, a careful review of the commission's order reveals that it conducted its own analysis of the nonmedical factors while placing some reliance upon the Burk report. The magistrate rejects relator's suggestion that the commission did not rely on "its own judgment" during the nonmedical analysis. (Relator's brief at 11.)
 {¶ 38} According to relator, the Burk report does not support the commission's analysis of relator's work history. In its order, the commission states:
Furthermore, the claimant's work history is also definitely a positive factor. The claimant working [sic] as a nurse's aide, car detailer, waitress as well as press operator, which indicates employment in occupations ranging from unskilled to in one case a semi-skilled position which required training as well as certification indicates and suggests that the claimant has the skills and qualifications to perform other entry level occupations based upon her prior semi-skilled work history and high school plus equivalent education.
 {¶ 39} Here, relator attempts to contrast the above-portion of the commission's order with the following portion of the Burk report:
Work History: Ms. Kleinman has held jobs for long periods of time, suggesting that she had a positive work ethic and basic work habits, including the ability to attend daily, be punctual, cooperate with peers and supervisors and perform tasks to her employers' expectations. Her work as a Nurse Assistant is semi-skilled work activity that does not have skills that transfer to sedentary occupations. That is the only work activity that she performed within the past relevant time period. Although a strong work history, it is not one that will be helpful in overcoming any significant employment barriers.
 {¶ 40} According to relator, the commission cannot find that relator's work history is a positive factor when it states reliance upon the Burk report which arguably presents a less than positive view of her work history. The magistrate disagrees with relator's argument.
 {¶ 41} Relator's argument is flawed because it is premised upon the incorrect assumption that the commission simply adopted the Burk report without any analysis of its own.
 {¶ 42} Clearly, the commission conducted its own analysis of the nonmedical factors even though it did find the Burk report useful. The commission indeed presented a different and more positive view of the work history than did Burk. It was clearly within the commission's discretion to do so. Jackson, supra.
 {¶ 43} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.